IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| RONALDO DA SILVA FERNANDES, | § § § | |
| Petitioner, | § § | |
| v. | § § | CAUSE NO. EP-25-CV-518-KC |
| MARY DE ANDA-YBARRA et al., | § § § | |
| Respondents. | § § | |

## ORDER

On this day, the Court considered Ronaldo Da Silva Fernandes' Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 1.  For the following reasons, the petition is **GRANTED IN PART**.

**I.   BACKGROUND**

This case involves Da Silva Fernandes' challenge to Respondents' decision to detain him in immigration custody without a bond hearing.  The following facts are derived from the allegations in the Petition, the Response, ECF No. 4, and documentary evidence submitted by the parties.

**A.   Arrival in the United States & Immigration Proceedings**

Da Silva Fernandes is a Brazilian citizen who entered the United States in 2015.  Pet. ¶¶ 2, 19.  After his entry, Da Silva Fernandes was detained and placed in removal proceedings.  *Id.* ¶ 20.  He was charged under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as an "alien present in the United States without being admitted or paroled, or who arrived in the United States at any time and place other than as designated by the Attorney General."  *Id.*; *id.* Ex. A ("Notice to Appear"), ECF No. 1-2.  On December 17, 2015, Da Silva Fernandes was

released under an Order of Release on Recognizance. Pet. ¶ 21; *id.* Ex. B ("Order of Release"), ECF No. 1-3.

In 2018, Da Silva Fernandes' brother filed a petition for alien relative on his behalf with U.S. Citizenship and Immigration Services ("USCIS"). Pet. ¶¶ 4, 23; *see id.* Ex. C ("I-130 Receipt Notice"), ECF No. 1-4. This petition is pending and, if approved, would permit Da Silva Fernandes to apply for adjustment of status. Pet. ¶¶ 4, 23. Da Silva Fernandes also has a pending application for asylum with USCIS since 2021. *Id.* ¶¶ 5, 24; *see id.* Ex. D ("USCIS Biometrics Appointment Notice"), ECF No. 1-5. On June 12, 2023, the Boston Immigration Court granted a Motion to Dismiss Da Silva Fernandes' removal proceedings without prejudice. Pet. ¶¶ 6, 25; *id.* Ex. E ("Order of Dismissal"), ECF No. 1-6. Prior to his re-detention, Da Silva Fernandes was living in Leominster, Massachusetts. Pet. ¶¶ 2, 19. Da Silva Fernandes has no criminal history and has established strong ties to the community since entering the United States. *Id.* ¶¶ 3, 22, 67.

On September 14, 2025, Da Silva Fernandes was taken into custody by Immigration and Customs Enforcement ("ICE") in Leominster, Massachusetts. *Id.* ¶¶ 7, 26. He was then transferred to Camp East Montana Detention Center in El Paso, Texas, where he remains detained. *Id.* On October 27, 2025, ICE issued a new Notice to Appear ("2025 Notice to Appear"), ECF No. 4-1. On November 6, 2025, an immigration judge denied bond, finding that she lacked jurisdiction. Resp. 2; *id.* Ex. B ("IJ Order), ECF No. 4-2.

**B.      Procedural History**

On November 4, 2025, Da Silva Fernandes filed a Petition for a Writ of Habeas Corpus, asking the Court to order his immediate release. *Id.* at 21. Respondents then filed their

Response. Da Silva Fernandes has a scheduled hearing before an immigration judge on December 4, 2025. Resp. 2.

To the extent there are any factual disputes, the Court resolves them in Respondents' favor. Therefore, it is unnecessary to hold a hearing. *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted) (finding that although 28 U.S.C. § 2243 requires the court to "summarily hear and determine the facts," the court need not hold an evidentiary hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the legal implications of undisputed facts").

## II.  DISCUSSION

In his Petition, Da Silva Fernandes argues that his detention violates (1) the Immigration and Nationality Act ("INA") and associated regulations, (2) his right to due process under the Fifth Amendment, and (3) his right to be free from unreasonable search and seizure under the Fourth Amendment. Pet. ¶¶ 32–70.

Respondents make three main arguments in opposition: (1) the Court lacks subject matter jurisdiction; (2) Da Silva Fernandes is subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b); and (3) Da Silva Fernandes' as applied due process challenge fails. Resp. 1.

This Court recently decided several petitions for writs of habeas corpus brought by immigration detainees challenging their mandatory detention without a bond hearing under § 1225(b). *See, e.g.*, *Martinez v. Noem* ("*Martinez I*"), No. 3:25-cv-430-KC, 2025 WL 2965859, at *2 (W.D. Tex. Oct. 21, 2025); *Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *3 (W.D. Tex. Oct. 2, 2025); *Lopez-Arevelo v. Ripa*, --- F. Supp. 3d ----, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025). Respondents rely on many of the same arguments that this Court

3

has already addressed and rejected. Where the arguments retread old ground, the Court need not repeat its analysis, especially where that analysis is consistent with "the overwhelming majority" of courts to consider these issues in recent months. *See Buenrostro-Mendez v. Bondi*, No. 25-cv-3726, 2025 WL 2886346, at *3 (S.D. Tex. Oct. 7, 2025).

### A.   Jurisdiction

Respondents argue that the Court is stripped of jurisdiction by 8 U.S.C. §§ 1252(g) and 1252(b)(9). Resp. 10–11. Respondents appear to attempt to bolster their § 1252(b)(9) argument through an appeal to §1225(b)(4). *Id.* at 11. The Court already rejected essentially the same arguments. *See Erazo Rojas v. Noem,* No. 3:25-cv-443-KC, 2025 WL 3038262, at *2 (W.D. Tex. Oct. 30, 2025) (rejecting § 1225(b)(4) arguments); *Santiago*, 2025 WL 2792588, at *3–5 (rejecting §§ 1252(g) and 1252(b)(9) arguments); *Lopez-Arevelo*, 2025 WL 2691828, at *4–5 (rejecting § 1252(g) arguments). In their briefing, Respondents fail to distinguish those prior jurisdictional analyses. Resp. 10–11.

Therefore, the Court finds that it has jurisdiction to consider Da Silva Fernandes' challenge to his detention.

### B.   Statutory Interpretation

Next, the parties debate the merits of the Government's new and expansive interpretation of mandatory detention under 8 U.S.C. § 1225(b) and whether Da Silva Fernandes falls within it.[1] Pet. ¶¶ 32–54; Resp. 3–10. Recently, courts across the country have held that this interpretation is either incorrect or likely incorrect. *See Buenrostro-Mendez*, 2025 WL 2886346, at *3 (noting that "almost every district court to consider this issue" has rejected the

---

[1] Respondents emphasize that they claim to detain Da Silva Fernandes under § 1225(b)(1) and not § 1225(b)(2). Resp. 3–5. Regardless, the Court expresses no opinion on the merits of Respondents' interpretation of the INA's detention provisions, confining its holding to due process grounds.

4

Government's new interpretation); *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, 2025 WL 2496379, at *8 n.5 (E.D. Mich. Aug. 29, 2025) (collecting twelve such decisions).

The Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, Da Silva Fernandes is entitled to due process and succeeds in his as-applied challenge.[2]

### C.   Procedural Due Process

Respondents argue that Da Silva Fernandes "has not raised any colorable claim that mandatory detention under § 1225(b)(1)(A)(iii)(II) [sic] is unconstitutional as applied to [him.]"[3] Resp. 1. They argue that, even as a matter of due process, Da Silva Fernandes "is not entitled to more process than what Congress provided him by statute." *Id.* at 12. This argument relies on an expansive reading of *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). *See id.* at 8–9. The Court has already rejected such a reading and does so again here. *See Santiago*, 2025 WL 2792588, at *7–10; *Lopez-Arevelo*, 2025 WL 2691828, at *7–10.

Respondents also appear to argue that Da Silva Fernandes is receiving sufficient due process because he is in full removal proceedings, where "constitutional protections are built in[]." Resp. 12. However, the process Da Silva Fernandes has received in relation to his removal is entirely distinct from the process he has received in relation to his detention, and whether that process is sufficient under the Fifth Amendment.

"To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem* ("*Martinez II*"), No. 5:25-cv-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8,

---

[2] For the same reason, the Court does not reach Da Silva Fernandes' Fourth Amendment argument. *See* Pet. ¶¶ 69–70.

[3] The mandatory detention provision actually appears at § 1225(b)(1)(A)(iii)(IV).

5

2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. "The essence of procedural due process is that a person risking a serious loss be given notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *M.S.L. v. Bostock*, No. 25-cv-1204, 2025 WL 2430267, at *8 (D. Or. Aug. 21, 2025) (citing *Mathews*, 424 U.S. at 348).

### 1. Private Interest

As to the first element, "'[t]he interest in being free from physical detention' is 'the most elemental of liberty interests." *Martinez II*, 2025 WL 2598379, at *2 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Respondents' position appears to be that Da Silva Fernandes does not acquire a liberty interest until his detention becomes unreasonably prolonged. Resp. 13. However, one's physical freedom is a paramount liberty interest, secured not just by statute but by the Constitution. *Hamdi*, 542 U.S. at 529. This liberty interest applies to noncitizens, although to varying degrees. *Martinez v. Hyde*, --- F. Supp. 3d ----, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025) (citation omitted).

Therefore, this Court has already held that noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status. *Martinez I*, 2025 WL 2965859, at *4. And other district courts have done the same. *See, e.g.*, *Sanchez Alvarez v. Noem*, No. 25-cv-1090, 2025 WL 2942648, at *1, 7 (W.D. Mich. Oct. 17, 2025); *Chogllo Chafla v. Scott*, Nos. 25-cv-437, 438, 439, 2025 WL

2688541, at *1, 10 (D. Me. Sept. 22, 2025). An even greater weight of authority holds that "once released from immigration custody, noncitizens acquire 'a protectable liberty interest in remaining out of custody on bond.'" *Lopez-Arevelo*, 2025 WL 2691828, at *11 (quoting *Diaz v. Kaiser*, No. 25-cv-5071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) (collecting cases)).

Da Silva Fernandes has been living in this country for the last ten years, since 2015, so "it cannot be denied that [he] was 'already in the country.'" *See Martinez v. Hyde*, 2025 WL 2084238, at *8 (quotations omitted). And two days after his initial entry into the United States, ICE released Da Silva Fernandes on his own recognizance. Order of Recognizance 1. There is no indication that Da Silva Fernandes failed to comply with any conditions of his release. *See generally* Pet.; Resp. He has two pending applications for immigration relief. Pet. ¶¶ 22–24. And he has established a life in Massachusetts. *Id.* ¶ 29. Da Silva Fernandes thus has a strong interest in being free from detention. *Cf. Santiago*, 2025 WL 2792588, at *10.

Therefore, the first *Mathews* factor weighs in favor of Da Silva Fernandes.

### 2.     Risk of Erroneous Deprivation

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Martinez II*, 2025 WL 2598379, at *3 (quoting *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. May 21, 2025)).

Here, detaining Da Silva Fernandes without holding a bond hearing creates a substantial risk that he may be erroneously deprived of his liberty. Without an individualized determination, it cannot be said that detention is warranted in his case. This risk can be easily ameliorated through a bond hearing. Indeed, agency decisionmakers regularly "conduct[] individualized custody determinations . . . consider[ing] flight risk and dangerousness." *Velesaca v. Decker*,

7

458 F. Supp. 3d 224, 242 (S.D.N.Y. 2020) (citation omitted); *see also* 8 C.F.R. §§ 236.1(c)(8), 1003.19(h)(3). Under "decades of DHS's own practices" prior to 2025, noncitizens "who entered without inspection" and were later arrested, just like Da Silva Fernandes, received bond hearings. *Chogllo Chafla*, 2025 WL 2688541, at *8 (citations omitted). This is precisely the type of proceeding that would give Da Silva Fernandes an opportunity to be heard and to receive a meaningful assessment of whether he is dangerous or likely to abscond, and it would greatly reduce the risk of an erroneous deprivation of his liberty.

Respondents appear to argue that it is better for Da Silva Fernandes that he is detained because his underlying relief application will be heard "more expeditiously on the detained docket than the non-detained docket." Resp. 13. But, those procedures would relate to Da Silva Fernandes' removal, not his detention. So, they would not ameliorate the risk that he will be erroneously deprived of his liberty while his removability is assessed.

Therefore, the second *Mathews* factor weighs in favor of Da Silva Fernandes.

### 3. Government's Interest

Respondents only identify their general interest in enforcing immigration laws as their basis for seeking continued detention without a bond hearing. *See* Resp. 3. But again, assuming Respondents' interpretation of the statute is correct, Da Silva Fernandes' constitutional interest in his liberty exists above and apart from the INA. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (citation omitted). Certainly, the Government has an interest in ensuring that noncitizens appear for their removal hearings and do not pose a danger to the community. But the decision to release Da Silva Fernandes on his own recognizance ten years ago, in and of itself, "reflects a determination by the government that the noncitizen is not a danger to the

8

community or a flight risk." *Lopez-Arevelo*, 2025 WL 2691828, at *11 (quoting *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd* 905 F.3d 1137 (9th Cir. 2018)). And in any event, if conditions have changed, any new concerns would be squarely addressed through a bond hearing. Thus, the third *Matthews* factor also weighs in favor of Da Silva Fernandes.

Because all *Mathews* factors support Da Silva Fernandes' position, the Court finds that his detention without an individualized assessment of flight risk and dangerousness deprives him of his constitutional right to procedural due process under the Fifth Amendment of the United States Constitution. Thus, he is entitled to a bond hearing. *See, e.g., Lopez-Arevelo*, 2025 WL 2691828, at *13.

### D. Scope of Relief

A majority of courts, including this one, have determined that the appropriate relief for an immigration detainee held in violation of due process is to require a bond hearing before an IJ.[4] *Id.* at *12 (collecting cases). The weight of authority also holds that when ordering a bond hearing as a habeas remedy, the burden of proof should be on the Government to prove by clear and convincing evidence that the detainee poses a danger or flight risk. *Id.* at *13 (collecting cases); *Velasco Lopez v. Decker*, 978 F.3d 842, 855 n.14 (2d Cir. 2010) (citations omitted). Many courts have also found it appropriate to give the Government a short window in which to complete the bond hearing, or else release the petitioner. *See, e.g., Velasquez Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (collecting cases). The Court follows this consensus and orders the same remedy here.

---

[4] Respondents argue that "the only relief available to Petitioner through habeas is release from custody." Resp. 3. The Court has already rejected this argument, *Lala Barros v. Noem*, No. 3:25-cv-488-KC, 2025 WL 3154059, at *5 n.1 (W.D. Tex. Nov. 10, 2025), and does so here for the same reasons.

### III.   CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**.  The Court **ORDERS** that, <u>**on or before November 26, 2025**</u>, Respondents shall either: (1) provide Da Silva Fernandes with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Da Silva Fernandes' continued detention; or (2) release Da Silva Fernandes from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, <u>**on or before November 26, 2025**</u>, Respondents shall **FILE** notice informing the Court whether Da Silva Fernandes has been released from custody.  If Da Silva Fernandes has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph.  Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

<u>**There will be no extensions of the November 26, 2025, deadlines.**</u>

**SO ORDERED**.

**SIGNED** this 19th day of November, 2025.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE